UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **TIMOTHY WOODS** | **CASE NO. 25-cv-1758** |
| **-vs-** | **JUDGE DRELL** |
| **SYRAH TECHNOLOGIES, LLC** | **MAGISTRATE JUDGE PEREZ-MONTES** |

# RULING

Before the court is a motion for summary judgment filed by defendant Syrah Technologies, LLC (Doc. 16) seeking dismissal of all claims asserted against it by *pro se* plaintiff Timothy Woods. The motion has been fully briefed and is ripe for consideration.

For the reasons expressed herein, the court finds the defendant's motion will be GRANTED.

## I. Background

Syrah Technologies, LLC ("Syrah"), a wholly owned subsidiary of Syrah Resources, operates a manufacturing facility in Vidalia, Louisiana where graphite is refined to create anode materials used in various types of batteries, including those for electric cars.

On November 28, 2022, Syrah hired Timothy Woods ("Woods") as a Laboratory Technician. His duties included operating an Inductively Coupled Plasma ("ICP") machine and testing battery anode products to ensure compliance with customer specifications. Woods worked with three other lab technicians: Brittany Moore (African American female), Alicia Payne (African American female), and Cody Smith (Caucasian male). Their direct supervisor was Mario Trepovicht ("Trepovicht"). Julio Martins ("Martins") was Trepovicht's supervisor.

In March 2023, Trepovicht set forth a performance plan for Woods that noted several goals for 2023. In August 2023, Trepovicht evaluated Woods performance in the stated areas on a scale of 1 through 5. Most of Woods' scores were a 2 (meets most expectations). He also received one rating of 3 (meets expectations), one rating of 2.5, and one rating of 1.5, (a rating between unsatisfactory and meets most expectations). Accordingly, Trepovicht placed Woods on a Performance Improvement Plan ("PIP") for 45 days in an effort to improve Woods' attention to detail, performance of tasks in a timely manner, and willingness to ask co-workers for help.

Trepovicht and Woods met on August 8 and 17 to discuss his performance, and Trepovicht completed forms on August 22, August 29 and September 6, 2023 regarding Woods' performance. Trepovicht consistently rated Woods 7.5 on a scale of 1 through 10. On September 12, 2023, Woods was evaluated by Martins[1] who noted that "as expected, the PIP had a satisfactory outcome. Timothy has demonstrated improvement in his performance...Timothy needs to keep developing himself in the lab practices and SOPs, progressing up to a level 4 to support Vidalia operation."

About this same time frame, Woods met with those in the Human Resources Department ("HR") to complain about Trepovicht's treatment of him. He complained that Trepovicht did not train him, was tougher on him than his white counterpart, Cody Smith, and made comments on four occasions that "they" didn't want to hire Woods because of his hair.[2] Woods also complained that Trepovicht placed him on a PIP to prevent him from obtaining the position of Quality Specialist, a position he applied for on or about September 6, 2023.

[1] Trepovicht's employment with Syrah was terminated September 21, 2023.
[2] Woods did not clarify in his briefing or during his deposition to whom "they" referred.

Woods surreptitiously recorded this meeting, as well as a follow-up meeting regarding this complaint, and a meeting between the Laboratory Technicians and HR advising that they were aware of their complaints regarding Trepovicht and his reassignment.[3]

At the end of September 2024, Trepovicht left Syrah and Danisha Grover ("Grover") was hired as the Laboratory Superintendent.

Around February 2024, Woods returned to HR to report that Grover was treating him unfairly. He asserted that she: (1) denied his request for paid time off but granted leave requests of others, and (2) reprimanded him for ordering a co-worker to finish work he should have completed prior to the end of his shift. Woods attempted to record this meeting, but failed to do so.

On March 29, 2024, Grover issued a PIP to Woods noting her dissatisfaction with his performance and advising he needed to concentrate on improving his attention to detail, timely performance of assigned tasks, asking for assistance, and keeping important information to ensure it was readily available when needed. Woods contends this was retaliation for going to HR to complain about disparate treatment, but Grover states she was unaware of his complaint throughout his employment with Syrah.

In the days following the issuance of the PIP, Grover continued to observe instances of Woods' poor job performance (significant errors in the laboratory). On April 3, 2024, Grover, Woods, and HR Manager Stephanie Durr ("Durr") had a meeting to discuss these ongoing

[3] Syrah argues that the recordings should not be considered as they have not been properly authenticated and constitute inadmissible hearsay. "At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form. … '[m]aterials cited to support or dispute a fact need only be capable of being presented in a form that would be admissible in evidence.'" Maurer v. Indep. Town, 870 F.3d 380, 384 (5th Cir. 2017) (citations omitted). We do not find the need to address the hearsay objection, at least at this time, as we found the recordings did not pertain to actions that took place prior to the time period at issue. Thus, the contents were not considered.

performance problems. Woods was told to go home and not to report back until notified. On or about April 7, 2024, Woods was terminated because of his poor work performance.

On or about August 12, 2024, Woods filed a charge with the EEOC. Therein, he alleged disparate treatment on the basis of race and sex, and retaliation for reporting discriminatory conduct by Grover. A notice of right to sue was issued on August 18, 2025.

Woods filed the instant lawsuit on November 12, 2025. Therein he asserts claims for discrimination, hostile work environment, and retaliation by both Trepovicht and Grover.

## II. Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anders on v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 680 (5th Cir.2011)(internal citations omitted). It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving party's case. The burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The nonmoving party must establish the existence of a genuine issue of material fact for trial by showing the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury

to render a verdict in his favor. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir.1995). A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof. Id. "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." Duffy, 44 F.2d at 312, citing Anderson v Liberty Lobby, 477 U.S. at 247.

## III. Law and Analysis

### A. Timeliness and Exhaustion of Administrative Remedies

Syrah's first argument in favor of dismissal is that Woods failed to timely file his EEOC charge pertaining to acts of discrimination by Trepovicht, and, even if his charge was timely, he did not properly exhaust his discrimination claims. We agree.

The Fifth Circuit Court of Appeals "has long required plaintiffs to exhaust their administrative remedies before bringing suit under Title VII." Price v. Choctaw Glove & Safety Co., 459 F.3d 595, 598 (5th Cir. 2006). See, 42 U.S.C. § 2000e, et seq. "[S]uch charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency." 42 U.S.C. § 2000e-5. When a plaintiff fails to do so, they are left without a remedy in court. Id.

Woods filed his EEOC charge on August 12, 2024 alleging that as early as March 29, 2024 and as late as April 7, 2024, his supervisor, Danesha Grover, treated him differently than other employees on the team. However, his complaint goes beyond the allegations made in his EEOC charge and focuses on actions undertaken by both Trepovicht and Grover. Because Woods

submitted his EEOC charge more than 300 days after Trepovicht's employment was terminated (the last possible day he could have discriminated against Woods), and failed to reference any of Trepovicht's alleged discriminatory conduct therein, Woods has failed to exhaust his administrative remedies pertaining to Trepovicht's alleged discrimination.

B. Discrimination

Although we find that all claims pertaining to Trepovicht are time barred, we note that those discrimination claims would be dismissed regardless. Under the McDonnell Douglas v. Green, 411 U.S. 792 (1973) burden shifting framework, the plaintiff must first establish a *prima facie* case that creates the inference of discrimination. Id. at 802. If accomplished, the burden shifts to the defendant to produce evidence establishing the adverse employment action was taken for a legitimate, non-discriminatory reason. Id. Assuming, such a showing is made, the burden returns to the plaintiff to establish, by a preponderance of the evidence either: (1) the defendant's reason is not its true reasons, but is a pretext for intentional discrimination, or (2) while the reason may be true it is but one of the reasons for his/her conduct, another of which is discrimination. Id. at 804-05; Reeves v. Anderson, 530 U.S. 133 (2000); Machinchick v. PB Power, Inc., 398 F.3d 345, 352 (5th Cir.2005), Keelan v. Majesco Software, Inc., 407 F.3d 332, 341 (5th Cir.2005). This second showing, known as the "mixed-motive framework", is not part of the traditional McDonnell-Douglas framework but is employed by the Fifth Circuit in an identical manner.

To establish a *prima facie* case of discrimination, Woods must show that he (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside of his protected group. Grimes v. Texas Dept. of Mental Health, 102 F.3d 137, 140 (5th Cir.1996);

Okoye v. University of Texas Houston Health Science Center, 245 F.3d 507, 512-13 (5th Cir.2001). Syrah does not dispute that Woods is a member of a protected class, was qualified for his position (at least initially), and was terminated. They do, however, argue that Woods is unable to show that he was either replaced by someone outside of his protected group or treated less favorably than other similarly situated employees outside of his protected group.

As to his claims against Trepovicht, Woods admitted in his deposition that neither Trepovicht's March 2023 performance plan, his evaluation of Woods' job performance under that performance plan, nor his placement on a PIP in August 2023 were acts of discrimination. His only claim of discrimination is that Trepovicht knew placing him on a PIP would prevent him from being considered for promotional opportunities. This claim fails because Woods cannot show that the position was filled by someone outside of his protected class. He applied for the position of Quality Specialist, and that position was advertised as an engineering degree preferred position. Not only was Woods not qualified for the position because he did not hold an engineering degree, but the position was never filled.

Woods is also unable to establish that Grover treated him less favorably than other similarly situated employees.

> [W]e require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken "under nearly identical circumstances." The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions.

Lee v. Kansas City Southern Ry. Co., 574 F.3d 253, 260 (5th Cir. 2009) (citations omitted). Here, Woods summarily alleges that Grover denied his paid time off but granted his coworkers paid time

off. Two of Woods coworkers are black females, and one is a white male; thus, setting the stage for a potential sex and race discrimination claim. However, he makes no other assertions regarding the circumstances surrounding the purported disparate treatment for us to even compare the situations. The same is true for Woods' contention that Grover discriminated against him because she reprimanded him for leaving his task for another employee to finish. He doesn't identify a comparator or what the circumstances were in that situation. He does suggest we look back at a single instance from 2023 when Trepovicht reprimanded him for not properly performing work using the ICP, but it would be inappropriate to impute Trepovicht's conduct to Grover. First, they are two distinct people working at two different times. Second, there is no evidence that Syrah promoted a workplace that allowed discriminatory conduct. Woods himself alleges that Syrah removed Trepovicht as his manager after the Laboratory Technicians complained of Trepovicht's discriminatory conduct.

Moreover, even if Woods was able to establish a *prima facie* case of race discrimination, he fails to provide any argument or evidence to contradict the reason articulated for his termination: poor work performance. He only summarily asserts that his work performance was as good or better than any of his coworkers, a fact he has not established.

C. Hostile Work Environment

Woods asserts that he was subjected to unwelcome harassment on the basis of his race. Specifically, he alleges that Trepovicht stated on four separate occasions that "they" didn't want to hire Woods because of his hair. This claim is time barred, as explained *supra*; nonetheless, we address it out of an abundance of caution.

To establish a hostile work environment claim under Title VII Woods must provide proof he: (1) he was a member of a protected class; (2) he was subjected to unwelcome harassment; (3)

the harassment was based on race; and (4) the harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir.2002) (citations omitted). Woods is no doubt a member of a protected class and he claims he was subjected to unwelcome harassment based on his race. However, he does not establish that the harassment affected a term, condition, or privilege of employment.

For harassment to affect a term, condition or privilege of employment, both the victim and a reasonable person must find it to be an environment that is hostile or abusive. Lauderdale v. Texas Dept. of Criminal Justice, Inv. Div., 512 F.3d 157, 163 (5th Cir.2007). A regular pattern of frequent verbal ridicule, or insults sustained over time can constitute severe or pervasive harassment. Walker v. Thompson, 214 F.3d 615, 626 (5th Cir.2000). Simple teasing, offhand comments, and isolated incidents, unless extremely serious, are insufficient to affect the terms, conditions or privileges of employment. Lauderdale, 214 F.3d at 626. A court should consider the "[t]otality of the employment circumstances [to] determine [] whether an environment is objectively hostile." Clark v. City of Alexandria, 116 F.4th 472, 479 (5th Cir. 2024) (quoting Harris v. Forklift Sys., 510 U.S. 17, 23 (1993) "Relevant consideration include (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." Id.

Woods asserts Trepovicht made a comment about his hair four times over the course of nearly a year. An examination of the case law leads us to conclude that four sporadic utterances does not rise to the level of frequent discriminatory conduct. See Lauderdale, 512 F.3d at 164 (harassment was pervasive when plaintiff received unwanted phone calls "ten to fifteen times a

night for almost four months); Farpella-Crosby v. Horizon Health Care, 97 F.3d 203, 806 (5th Cir. 1996) (harassing conduct was pervasive when it occurred two to three times a week); West v. City of Houston, Texas, 960 F.3d 736, 742 (5th Cir. 2020) (several incidents of sexual discrimination and harassment were not sufficiently "frequent or pervasive"). Further, as off-putting as the comment may be, they are not severe in the realm of discriminatory conduct. Also, the comments were not physically threatening nor has Woods commented at any point that the statements were humiliating. Finally, Woods has failed to assert, much less establish, how the comments adversely affected his work performance, and based on Woods' assertions that there was nothing wrong with his work performance, he cannot establish otherwise.

D. Retaliation

Finally, Syrah moves for summary judgment on Woods' retaliation claims. Woods asserts he was retaliated against for complaining to HR that Grover was treating him unfairly. Woods contends that after he disclosed this disparate treatment, Grover placed him on a PIP and then abruptly terminated him. Woods claims that he has direct evidence of retaliation and alludes to purported recordings of the conversation where he reported Grover's retaliatory conduct. We have not found any such recording. Accordingly, there is no direct evidence of retaliation. Thus, we turn to the McDonnell Douglas burden shifting framework to evaluate Woods' retaliation claim.

To establish a *prima facie* case, Woods must establish: (1) he participated in an activity protected by Title VII; (2) his employer took adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment. Harvill v. Westward Commc'ns, LLC, 433 F.3d 428, 439 (5th Cir.2005). Syrah acknowledges that Woods contacted HR to report that he believed Grover was treating him unfairly, but it denies that

complained it was discriminatory in nature. In support, Syrah presented Rebecca Posey's[4] declaration wherein she states just that. Woods does not present any evidence to contradict Posey's statement. Thus, there is simply no evidence that he engaged in protected activity.

Even if we were to assume that Woods engaged in protected activity, Syrah denies that Woods' placement on a PIP or his termination were related to anything other than his poor work performance which is evidenced by Grover's declaration. Further, in her declaration, Grover states that neither Woods nor Posey told her about his complaint, and she did not know such a complaint was made until after Woods was terminated. Thus there is no causal connection between purported protected activity and the termination. Woods argues we should consider the fact he reported discrimination and disparate treatment in 2023, but his prior actions do not allow us to draw an inference for the reasons articulated *supra*.

Woods further argues that we should find the temporal element satisfied because the time between the protected activity and the adverse employment action were very close. The Fifth Circuit case law, "although largely unpublished, 'fits with the Supreme Court's requirement that the temporal proximity be "very close" to show causation," as do "previous decisions that a 'four-month gap in time, standing alone, is insufficient to establish *prima facie* evidence of causation." Flanner v. Chase Inv. Services Corp., 600 Fed.Appx. 914, 922 (5th Cir.2015) (unpublished). See also, Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-274 (2001) (*per* curium). Woods complained that Grover was treating him unfairly on February 5, 2024; he was placed on a PIP March 29, 2024, and he was terminated on April 7, 2024. While the timing is very close, Woods

[4] Rebecca Posey is the Human Resources Superintendent for Syrah's Vidalia, Louisiana facility.

fails to provide competent evidence to counter the legitimate reason articulated by Syrah for the adverse employment action: his poor work performance.

IV. Conclusion

Woods admits he was placed on a PIP in 2023 and that action was not discriminatory. Woods asserts that Syrah took action when he and his coworkers complained about Trepovicht's discriminatory conduct. There is no evidence to support his claims against Syrah, only self-serving statements, that Grover discriminated against him, treated him unfairly, and fired him because he complained. Accordingly, there are no questions of fact which prevent us from granting summary judgment. The court will issue a judgment in conformity with these findings.

THUS DONE AND SIGNED at Alexandria, Louisiana this 14th day of August 2026.

DEE D. DRELL, SENIOR JUDGE
UNITED STATES DISTRICT COURT